# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICKEY DEANGELO MASON, #R-04326, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 17-cv-01026-SMY ) |
| ORANGE CRUSH OFFICERS, JACQUELINE LASHBROOK, SANDIE WALKER, C/O MEYERS, LT. SPILLER, SGT. HARRISON, COUNSELOR PRICE, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4 and SGT. SNELL, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Mickey Mason, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983. This case was severed from *Mason v. Spiller, et al.*, No. 17-cv-00867-DRH-RJD (S.D. Ill. 2017) ("original case"), pursuant to a Memorandum and Severance Order ("Severance Order") dated September 25, 2017. (Doc. 1). The severed case focuses on a single claim (Count 5, original case) against Menard's Orange Crush Officers for taking Plaintiff's personal property, including his legal materials, during a cell shakedown on August 3, 2017. (Doc. 1, pp. 10-15). Plaintiff seeks monetary damages and the return of his property. (Doc. 13, p. 20).

1

Soon after this severed case was opened, Plaintiff filed a series of motions seeking leave to amend the Complaint[1] (Docs. 8, 9, 11) in this case. His initial motions (Docs. 8 and 9) were denied because Plaintiff failed to file a proposed amended complaint along with the motions. (Doc. 10). However, this Court accepted the First Amended Complaint filed by Plaintiff on February 22, 2018,[2] and it is now before the Court for preliminary review.

28 U.S.C. § 1915A. Section 1915A provides, in pertinent part:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

---

[1] The document filed as a Complaint (Doc. 2) herein was actually the Amended Complaint (Doc. 6) in the original case.
[2] During this same time period, Plaintiff challenged the Severance Order in the original case. (Docs. 16 and 19, original case). He argued that the instant case was improperly severed from the original. The Court denied his motions on May 4, 2018. (Doc. 47, original case).

## First Amended Complaint

This severed case arises from a single cell shakedown that occurred less than two weeks before Plaintiff filed the original case on August 15, 2018. (Doc. 13, p. 2). According to the allegations of the First Amended Complaint, C/O Meyers and three unknown officers (John Doe 1, John Doe 2, John Doe 3, and John Doe 4) entered Plaintiff's cell and removed his personal property without his consent on August 3, 2017. (Doc. 13, p. 2-3). They took trial transcripts, legal documents, exhibits, and privileged correspondence, among other things. (Doc. 13, pp. 5, 11, 14). A detailed list of the property is included in the First Amended Complaint (Doc. 13, pp. 11, 14, 20).

At the time, Plaintiff was preparing a successive post-conviction petition to challenge his conviction and sentence. (Doc. 13, p. 4). Without his legal materials, Plaintiff was unable to properly present his claims. (Doc. 13, p. 5). He blames C/O Meyers and John Does ##1-4 for interfering with his ability to pursue post-conviction relief. (Doc. 13, pp. 4-5).

Plaintiff reported the incident to Sandie Walker, who refused to file an incident report or report the incident to Sergeant Harrison. (Doc. 13, pp. 5, 12). Walker told Plaintiff that there was nothing she could do. (Doc. 13, p. 12). She also stated that John Doe 1 had no time to address his personal issues. *Id*.

Plaintiff alleges that Walker's conduct amounted to retaliation for an earlier incident. (Doc. 13, p. 15). Specifically, a couple days before the cell shakedown, Plaintiff told "Major/John Doe" of the North 1 Cell House that Counselor Price routinely ignored his requests for a transfer, trust fund statement, money vouchers, and grievances. (Doc. 13, p. 16). He also complained that Counselor Price and Walker failed to make rounds in the cell house. *Id*. Walker told Plaintiff that she was "pissed" he decided to complain directly to the major. *Id*. She also

told Plaintiff that she runs the North Cell House, and Sergeant Harrison "will back her up" on her decisions. *Id*. She threatened to send Plaintiff to the North 2 Cell House "where the homosexuals are" so that he could complain all he wanted. (Doc. 13, pp. 16, 19). Sergeant Harrison was present during the conversation. (Doc. 13, p. 17).

On August 4, 2017, Plaintiff filed an emergency grievance to complain about the cell shakedown and confiscation of his personal property. (Doc. 13, p. 12). That same day, he prepared a staff misconduct grievance to complain about Sandie Walker's response to his request for assistance. *Id*. He submitted the grievances to Counselor Price and to the grievance office. *Id*. It is unclear whether he received a response to these grievances.

Plaintiff also told his family about the incident. (Doc. 13, p. 12). They contacted Warden Jacqueline Lashbrook and another unknown individual twice in August 2017. (Doc. 13, pp. 12-13). Warden Lashbrook told Plaintiff's family that the situation would be addressed. (Doc. 13, p. 13).

On August 7, 2017, Plaintiff was escorted to an interview with Lieutenant Spiller. (Doc. 13, p. 13). Instead of inquiring into the cell shakedown that occurred three days earlier, Lieutenant Spiller focused the interview on an earlier incident of alleged sexual assault by prison guards on April 1, 2016. *Id*. The lieutenant explained that he wanted to know the "end result" of that incident because Plaintiff's father had called to complain about harassment by staff. *Id*. Plaintiff explained that staff turned a blind eye to that incident and then targeted his cell for a shakedown when Plaintiff exercised his right to complain. *Id*. Lieutenant Spiller asked Plaintiff if the tactical team confiscated documents pertaining to his civil suit, and he said that they only took some of the documents. *Id*. Plaintiff gave the rest of the documents to his father for safekeeping. (Doc. 13, p. 14). When Plaintiff provided Lieutenant Spiller with an itemized list

4

of legal materials that were confiscated, the lieutenant wrote down only some of the items. *Id*. The lieutenant then wrote "refused" on the inmate signature line. (Doc. 13, p. 15). Plaintiff questioned the lieutenant about this and was allowed to review and sign the investigation report. *Id*. However, Lieutenant Spiller refused to provide Plaintiff with a copy. *Id*.

On August 7, 2017, Plaintiff also prepared a grievance to complain about Lieutenant Spiller's handling of the investigation. (Doc. 13, p. 15). He characterized the lieutenant's conduct during the interview as attempted bribery. *Id*. He filed one copy of the grievance with Counselor Price and another copy with the grievance office. *Id*. He received no response to either grievance. *Id*.

Plaintiff was moved to the North 2 Cell House on August 10, 2017. (Doc. 13, p. 16). On August 15, 2017, he was escorted from his new cell to an office for questioning by C/O Gardner. (Doc. 13, p. 17). Plaintiff was handcuffed to the floor during the interview. *Id*. When Gardner entered the room, the officer asked Plaintiff about his gang affiliation before interviewing him about the cell shakedown. *Id*. Plaintiff objected to the line of questioning and denied any gang affiliation. *Id*. C/O Gardner was angered by Plaintiff's response and insisted Plaintiff was lying about his gang affiliation. *Id*. Plaintiff asked to return to his cell, and the interview ended. *Id*.

On August 16, 2017, William H. Spiller and Lieutenant Spiller told Plaintiff that he was not going to "get away with trying to pursue [his] issues and that it's not over." (Doc. 13, p. 18). Plaintiff filed an emergency grievance the same day to report the threat to Warden Lashbrook. (Doc. 13, p. 17). He received a response from Alex Jones instead of the warden, indicating that his situation presented no emergency. (Doc. 13, p. 18). He then submitted a grievance to Counselor Hill and the Grievance Office, but he received no response. *Id*.

5

On September 28, 2017, Plaintiff was denied a meal when Sergeant J. Snell removed him from the lunch line without just cause. (Doc. 13, p. 18). He asked C/O John Doe (a gallery officer) to provide him with a meal, but his request was denied. *Id*. As a result, Plaintiff experienced pain, suffering, and loss of sleep for two days. *Id*. The following day, William H. Spiller informed staff members in the North 2 Cell House to "watch" Plaintiff because he is a "snitch." *Id*.

Plaintiff maintains that all of the named defendants had knowledge of or were involved in the cell shakedown that occurred on August 3, 2017. He asserts claims against them for interference with his access to the courts and retaliation. Plaintiff seeks the return of certain documents. (Doc. 13, p. 20). He also seeks monetary relief against the defendants. *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to re-characterize the severed claim (Count 5, original case) as follows:

> **Count 1 -** Denial of access to courts claim against the defendants who searched Plaintiff's cell and confiscated his legal documents on August 3, 2017.
>
> **Count 2 -** Retaliation claim against the defendants for taking adverse action against Plaintiff after he complained about them in August 2017.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. **Any claim not identified above but contemplated by the allegations in the First Amended Complaint should be considered dismissed without prejudice from this action.**

**Count 1**

Plaintiff maintains that he was denied access to the courts by prison officials who entered his cell and removed his legal documents while he was in the process of preparing a post-conviction petition on August 3, 2017. Inmates have a "constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). Prison officials who intentionally take or destroy an inmate's legal papers may be liable for a deprivation of this right. *Gregory v. Nunn*, 895 F.2d 413, 415 (7th Cir. 1990) (citation omitted)). However, the negligent loss or destruction of legal papers does not give rise to a constitutional claim. *Kincaid v. Vail*, 969 F.2d 594, 602 n. 10 (7th Cir. 1992).

In order to state a viable claim for the denial of court access, a plaintiff must allege that he suffered from specific prejudice to his court access. *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir. 1992). An essential element of the claim is actual or threatened detriment to an inmate's ability to bring a "legitimate challenge to a conviction, sentence, or prison conditions." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Martin v. Davies,* 917 F.2d 336, 340 (7th Cir. 1990); *Howland v. Kilquist,* 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). Here, Plaintiff alleges that he was unable to present a proper post-conviction petition because his legal documents were confiscated by C/O Meyers, John Doe 1, John Doe 2, John Doe 3, and John Doe 4. Therefore, Count 1 survives preliminary review against these defendants.

However, this claim will be dismissed without prejudice against all other named defendants, including the Orange Crush Officers,[3] Jacqueline Lashbrook, Sandie Walker, Lieutenant Spiller, Sergeant Harrison, Counselor Price, and Sergeant Snell. The First Amended

---

[3] In place of the Orange Crush Officers, it appears that Plaintiff has used more specific designations for the unknown officers who conducted the shakedown of his cell on August 3, 2017, *i.e.*, John Doe 1, John Doe 2, John Doe 3, and John Doe 4.

Complaint does not suggest that these defendants were involved in the shakedown of Plaintiff's cell on August 3, 2017. Plaintiff does not claim that any of these individuals took his legal papers or directed another individual to do so. He does not suggest that any of these defendants knew about the cell shakedown until after it occurred. Even then, there is no indication that the defendants had control over the documents and could return them to Plaintiff. For these reasons, Plaintiff's court access claim does not survive preliminary review against these individuals.[4]

### Count 2

Plaintiff also claims that the defendants retaliated against him for filing complaints against prison officials. Prisoners have a First Amendment right to free speech, and prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In addition, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt*, 224 F.3d at 618 ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock*, 102 F.3d at 275 (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit).

"A complaint states a claim for retaliation when it sets forth 'a chronology of events from

---

[4] To the extent that Plaintiff intended to bring a claim for money damages based on the loss of personal property, he should pursue this claim, if at all, in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).

which retaliation may plausibly be inferred.'" *Zimmerman*, 226 F.3d at 573 (citation omitted). In this case, Plaintiff alleges that Sandie Walker retaliated against him for complaining to the major about refusing to investigate the cell shakedown and by transferring him to Menard's North 2 Cell House. This chronology presents a colorable claim of retaliation against this defendant. Therefore, Plaintiff's retaliation claim against Walker will proceed. *See Zimmerman*, 226 F.3d at 574 (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").

However, the allegations do not retaliation claims against any other defendant. Plaintiff instead challenges the manner in which his grievances were handled (or ignored). For example, Plaintiff's allegations against Warden Lashbrook, Lieutenant Spiller, and Counselor Price focus on their alleged failure to investigate his grievances and complaints. A defendant's action or inaction in handling a plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango*, 681 F.2d at 1100-01. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli*, 81 F.3d at 1430. To be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v.*

*McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Further, Sergeant Harrison's mere presence during Plaintiff's conversation with Sandie Walker does not support a claim of retaliation against him. There is no indication that the sergeant took any action to retaliate against Plaintiff. In addition, Plaintiff does not allege that C/O Meyers, John Doe 1, John Doe 2, John Doe 3, or John Doe 4 conducted the cell shakedown in order to retaliate against him. And although Plaintiff brings a claim of retaliation against Lieutenant Spiller for threatening him and against Sergeant Snell for denying him a single meal, both claims arose after Plaintiff filed the original case and/or are also unrelated to the surviving claims and parties herein. Thus, Plaintiff must pursue these retaliation claims against Lieutenant Spiller and Sergeant Snell in a separate suit after first exhausting his administrative remedies. *See* FED. R. CIV. P. 18, 20-21. *See also UWM Student Ass'n v. Lovell*, -- F.3d --, 2018 WL 1940531, *7 (7th Cir. April 25, 2018); *Owens v. Evans*, 878 F.3d 559, 561 (7th Cir. 2017); *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, at *1 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d at 952; *George*, 507 F.3d at 607.

In summary, Count 2 shall receive further review against Sandie Walker and shall be dismissed without prejudice for failure to state a claim against Defendants Orange Crush Officers, Jacqueline Lashbrook, C/O Meyers, Lieutenant Spiller, Sergeant Harrison, Counselor Price, John Doe 1, John Doe 2, John Doe 3, John Doe 4, and Sergeant Snell.

### Other Claims

Any claims not addressed herein are considered dismissed without prejudice from this action. This includes claims against parties and non-parties alike. In the First Amended Complaint, Plaintiff described events that occurred after he commenced his original case. He

also devoted considerable space to allegations against non-parties. This includes an alleged threat by William H. Spiller (a non-party) and Lieutenant Spiller (a party) on August 16, 2017 (Doc. 13, pp. 17-18); grievances he filed with Counselor Hill (a non-party) (Doc. 13, p. 18); the denial of a meal by Sergeant Snell (a party) and Gallery Officer John Doe (a non-party) on September 28, 2018 (Doc. 13, p. 18); and instructions issued to staff by William H. Spiller (a non-party) to "watch" Plaintiff because he was a "snitch" on September 29, 2017 (Doc. 13 p. 18).

Plaintiff cannot bring a claim against a non-party under § 1983. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

Likewise, Plaintiff cannot pursue any claims until after he exhausts all available administrative remedies. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing suit under § 1983. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). Although the Court takes no position on the issue of exhaustion with respect to Counts 1 and 2, many of the claims mentioned in the preceding paragraph arose *after* the original case was filed, making it clear that Plaintiff failed to exhaust his administrative remedies with respect to those claims. He must pursue them in a separate action after first exhausting his available administrative remedies.

**Identification of Unknown Defendants**

The fact that Plaintiff cannot identify John Doe 1, John Doe 2, John Doe 3, or John Doe 4 is not fatal to his claim in Count 1 against them for the denial of access to the courts. Correctional officers may not escape liability simply because of a plaintiff's inability to identify the particular officers who violated his constitutional rights. *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) (reversing dismissal of claims where the prisoner plaintiff had been unable to identify defendants and remanding for finding of facts). "[I]dentification of the responsible party may be impossible without pretrial discovery." *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th. Cir. 1995). Where an inmate's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim but the names of those defendants are not known, the inmate should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez*, 577 F.3d at 832. Plaintiff will be allowed to proceed with Count 1 against John Doe 1, John Doe 2, John Doe 3, and John Doe 4, the officers who confiscated legal papers from his cell on August 3, 2017. However, Plaintiff must identify each defendant with particularity before service of the First Amended Complaint can be made on him.

Jacqueline Lashbrook, who is Menard's current warden, is already named as a defendant in this action. She will remain as a named defendant, in her official capacity only. Warden Lashbrook shall be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the First Amended Complaint.

### Pending Motions

#### 1. Motion to Appoint Counsel (Doc. 4)

Plaintiff's Motion to Appoint Counsel is **DENIED** without prejudice. When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the . . . plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). In his Motion, Plaintiff has not demonstrated reasonable efforts to obtain counsel on his own. Plaintiff's motion is therefore denied. However, he may renew his motion after the defendants file an answer, if he can identify at least three attorneys or law firms he contacted and provide copies of their responses, if possible.

#### 2. Motion for Order (Doc. 5)

Plaintiff filed a Motion for Order (Doc. 5) in the original case that was re-filed in this severed case. In the Motion, he seeks relief that pertains to more than one case. In connection with this case, it appears that Plaintiff seeks the return of his confiscated documents and other personal property items. *Id.* He does not provide an itemized list of these items in the motion. *Id.* He also does not request a temporary restraining order or preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. *Id.* The Court thus interprets his request for injunctive relief as one for relief at the end of the case.

Further, the "Motion for Order" is superseded and replaced by the request for injunctive relief made in the First Amended Complaint, which includes a list of items Plaintiff wants returned (Doc. 13, p. 20). The list in the First Amended Complaint is more detailed than the list in the Motion for Order. It also appears to be updated.

Plaintiff's Motion for Order is thus **DENIED** because it is **SUPERSEDED** by the request for injunctive relief in the First Amended Complaint. Should Plaintiff deem more immediate relief to be necessary, he must file a separate Motion for Temporary Restraining Order and/or Preliminary Injunction with this Court. In the Motion, he must set forth the specific relief he seeks in connection with Counts 1 and 2 and the reasons he is entitled to relief under Rule 65(a) and/or (b). The warden is already named in her official capacity and shall be responsible for carrying out any injunctive relief that is order in this case. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

### Disposition

The Clerk is **DIRECTED** to **TERMINATE** Defendants **JACQUELINE LASHBROOK** (individual capacity only), **ORANGE CRUSH OFFICERS, LT. SPILLER, SGT. HARRISON, COUNSELOR PRICE,** and **SGT. SNELL** as defendants in this action. Defendant **JACQUELINE LASHBROOK (official capacity only)** is responsible for responding to discovery aimed at identifying the unknown defendants and for implementing any injunctive relief that is ordered herein.

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendants **C/O MEYERS** and, once identified, **JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,** and **JOHN DOE 4.** However, **COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against Defendants **ORANGE CRUSH OFFICERS, JACQUELINE LASHBROOK, SANDIE WALKER, LT. SPILLER, SGT. HARRISON, COUNSELOR PRICE,** and **SGT. SNELL**.

**IT IS ORDERED** that **COUNT 2** is subject to further review against Defendant **SANDIE WALKER.** However, **COUNT 2** is **DISMISSED** without prejudice against

Defendants **ORANGE CRUSH OFFICERS, JACQUELINE LASHBROOK, C/O MEYERS, LT. SPILLER, SGT. HARRISON, COUNSELOR PRICE, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4,** and **SGT. SNELL** for failure to state a claim upon which relief may be granted.

As to **COUNTS 1** and **2**, the Clerk of Court shall prepare for the Defendants **SANDIE WALKER, JACQUELINE LASHBROOK (official capacity only),** and, once identified, **JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,** and **JOHN DOE 4**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 13), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,** and **JOHN DOE 4** until such time as Plaintiff has identified them by name in a properly filed

motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 13) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendants

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: May 22, 2018**

**s/ STACI M. YANDLE**
**U.S. District Judge**
